# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SCOTT SPEERT et al., | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-10-718 |
| PROFICIO MORTGAGE VENTURES, LLC, et al., | * | |
| Defendants | * | |

## MEMORANDUM

Plaintiffs Scott Speert, Linda Nieves, Harvey Sanford, and David Rascoe sued Proficio Mortgage Ventures, LLC, and Glenn Hyatt, former manager of Proficio's branch office in Owings Mills, Maryland, claiming violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* (LexisNexis 2008). (Compl., ECF No. 20.) Proficio was a licensed mortgage lender during the time that is the subject of the complaint. Plaintiffs claim they were employed by Proficio from July 2009 through October 2009 in a satellite branch office, also located in Owings Mills, Maryland, and were responsible for generating mortgage loans for Proficio. (2nd Am. Compl. ¶ 6, ECF No. 20.) They further claim they were not paid minimum wages during portions of this time period, they were not paid overtime during portions of this time period, and they were not paid commissions they had earned. (*Id.* ¶ 18, 21, 25.)

Plaintiffs have filed a motion for partial summary judgment that seeks to narrow the issues in the case. (ECF No. 39.) They have filed this motion only with respect to Speert, Nieves, and Rascoe because Proficio disputes whether Sanford was employed at all with the

company. (Pls.' Mot. Partial Summ. J. 3.) Plaintiffs have requested the Court to resolve the following points, rephrased by the Court:

1. Whether Proficio is a covered employer under the FLSA;

2. Whether Hyatt is a covered employer under the FLSA;

3. What is the undisputed period of employment for Speert, Nieves, and Rascoe;

4. Whether Defendants can satisfy their burden of proving by clear and convincing evidence that Plaintiffs fit within the "outside salesperson" exemption;

5. Whether Defendants violated the FLSA by not paying the required statutory minimum wages during the undisputed period of Plaintiffs' employment;

6. Whether Defendants violated the FLSA by not paying the required statutory overtime compensation during the undisputed period of Plaintiffs' employment; and

7. Whether Defendants violated the FLSA by not maintaining required records during the undisputed period of Plaintiffs' employment.

(*Id.*)

## I. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a

defendant's motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## II. Analysis

### A. *Whether Proficio is a covered employer*

The parties have made resolution of the first question easy by entering into a stipulation to the effect that during the time in question, Proficio "was an enterprise engaged in commerce within the meaning of section 3(s)(1)(A) of the Fair Labor Standards Act, 29 U.S.C. section 203(s)(1)(A)." (Pls.' Mot., Ex. 6.) Thus, Proficio is an employer covered by the FLSA's proscriptions on failure to pay minimum wage, 29 U.S.C. § 206(a), and failure to compensate for overtime, 29 U.S.C. § 207.

### B. *Whether Hyatt is a covered employer*

Plaintiffs also seek to hold Hyatt responsible as a covered employer under the FLSA, which treats as an employer "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA's provisions "should be broadly interpreted and applied to effectuate its goals," *Purdham v. Fairfax Co. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011), which included the intent "to lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions"

3

by eliminating low wages and long hours, *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).

Determining who may be considered an employer under the FLSA has been the subject of only a few Supreme Court cases, none of which is similar to the facts of the instant case. *See, e.g., Rutherford* (determining whether meat boners were employees or independent contractors), cited *supra*; *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32-33 (1961) (ruling that members of craftmaking cooperative were employees); *Falk v. Brennan*, 414 U.S. 190, 195 (1973) (concluding that maintenance workers were employed not only by their immediate employer but also by rental property management firm in light of latter's extensive managerial responsibilities, which gave it substantial control of terms and conditions of employees' work). In these cases, the Supreme Court focused on the economic reality of the employment relationship rather than on technical concepts of common law, which are more properly considered in determining a superior's liability to third parties for subordinates' torts. *See Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1261 (4th Cir. 1974) (construing meaning of "employer" in Occupational Safety and Health Act; noting OSHA's similarity to FLSA). In a case under the National Labor Relations Act, the Supreme Court addressed the status of guards in plants producing war materiel and found the guards remained employees of the corporation that owned the plants even though the guards had been "militarized" by the U.S. Army. *N.L.R.B. v. E.C. Atkins & Co.*, 331 U.S. 398, 412-13 (1947). The Court observed,

> The most important incidents of the employer-employees relationship—wages, hours and promotion—remained matters to be determined by respondent rather than by the Army.
>
> . . .
>
> In this setting, it matters not that respondent was deprived of some of the usual powers of an employer, such as the absolute power to hire and fire the guards and the absolute power to control their physical activities in the

> performance of their service. Those are relevant but not exclusive indicia of an employer-employee relationship under this statute. As we have seen, judgment as to the existence of such a relationship for purposes of this Act must be made with more than the common law concepts in mind. That relationship may spring as readily from the power to determine the wages and hours of another, coupled with the obligation to bear the financial burden of those wages and the receipt of the benefits of the hours worked, as from the absolute power to hire and fire or the power to control all the activities of the worker.

*Id.* at 413-14. The Court further noted that the National Labor Relations Board's conclusion was reinforced by other findings that militarized guards were treated as private employees for purposes of the FLSA. *Id.* at 413 n.19.

Construing FLSA's definition of "employer" has also only been touched upon in Fourth Circuit cases. *See, e.g., Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 307 (4th Cir. 2006) (resolving questions whether two employers were joint employers and whether individuals were employees or independent contractors); *Brock v. Hamad*, 867 F.2d 804, 809 n.6 (4th Cir. 1989) (finding Hamad was employer within meaning of FLSA because he hired and directed employees in his rental property business); *Howard v. Malcolm*, 852 F.2d 101, 104-05 (4th Cir. 1988) (noting similarity of "employer" definition in Agricultural Worker Protection Act and FLSA). In *Howard*, the Court noted an individual may be considered to be an employer "where the work follows the usual path of the employee; and where, as a matter of economic reality, the employee is dependent upon that person for their livelihood." 852 F.2d at 104 (citations and internal quotation marks omitted).

A consistent factor in cases from other circuits has been operational control over the individuals claiming to have been employees. The Second Circuit has noted the relevant factors to consider include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment

records.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). That court also observed that none of the four factors is dispositive and that a court should consider the totality of circumstances. *Id.* However, the *Herman* opinion further noted that it is not necessary to employer status to monitor employees continuously. Instead, "[c]ontrol may be restricted, or exercised only occasionally." *Id.*

The Fifth Circuit has concluded the designation of "employer" under the FLSA encompasses "'an individual who, though lacking a possessory interest in the "employer" corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees.'" *Reich v. Circle C Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). The Sixth Circuit concluded that a party only need have "'operational control of *significant aspects* of the corporation's day to day functions.'" *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991). The Eleventh Circuit in *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), relied upon the absence of operational control by the president, who was also a director and principal stockholder of a corporation, to determine that he was not an employer within the meaning of the FLSA. *Id.* at 637-38. The First Circuit found that corporate officers with significant ownership interests "who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment" of wages, were employers within the scope of the FLSA and, therefore, personally liable. *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983).

Plaintiffs do not dispute that Hyatt had no ownership interest in Proficio, and they do not dispute that he was not an officer of Proficio. They note that Hyatt was the branch manager of the Owings Mills branch of Proficio. (Pls.' Mot. Partial Summ. J., Ex. 7, Hyatt Dep.37:6,

6

Mar. 24, 2011, ECF No. 39.) Proficio responded to interrogatories about branch managers as follows:

> Branch managers are authorized to hire and terminate the employment of branch employees. Branch managers manage employees while in the office. Proficio's branch managers have discretion to set local office hours, but must follow overall company policy in regards to the total number of hours worked. Branch managers approve payroll and commission payments. . . . See Branch Manager position description . . . .

(*Id.* Ex. 8, Ans. Interrog. #10.) It should be noted that Proficio's answers to interrogatories were signed by Stephen L. Bennett, under penalty of perjury, on behalf of Proficio on December 17, 2010. Proficio's Branch Manager Job Description included the following responsibilities:

> (a) Hiring, management of performance, and termination of positions for all branch personnel; in accordance with Employer's employment management policies and procedures;
>
> . . .
>
> (g) Overseeing all day-to-day branch activities and branch personnel, ensuring that the branch culture is consistent with Employer's corporate goals, and ensuring that all branch personnel abide by Employer's policies and procedures;
>
> (h) Ensuring that all branch personnel . . . participate in all Employer-sponsored training, and attend all requisite company meetings.

(*Id.* Ex. 10.)

In contrast to these clear statements of authority, Hyatt submitted an affidavit in support of Defendants' opposition to Plaintiffs' motion in which he stated he "could recommend new hires, but did not have ultimate authority to hire new employees on behalf of Proficio." (Defs.' Opp. Ex. 1, Hyatt Aff. ¶ 4, ECF No. 41.) Testimony of Proficio's Rule 30(b)(6)[1] designee, Stephen L. Bennett, was to a similar effect, i.e., that a branch manager could only recommend hiring and termination of employees since the ultimate decision was made at Proficio's Jacksonville, Florida, headquarters. (*Id.* Ex. 2, Bennett Dep. 78:20—79:4, Mar. 18, 2011.)

---

[1] Federal Rules of Civil Procedure.

Bennett further testified that Hyatt, as branch manager, had authority to set the terms of the branch employees' compensation. (*Id.* 79:5-7.)

Under Rule 33(c), Federal Rules of Civil Procedure, "[a]n answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence." Proficio's interrogatory answer may be considered an admission by a party-opponent (and therefore not hearsay) under Rule 801(d)(2), Federal Rules of Evidence. *See Buckley v. Airshield Corp.*, 116 F. Supp. 2d 658, 669 (D. Md. 2000) ("[A] party opponent's answers to interrogatories are admissible as admissions. . . . Such admissions qualify as substantive evidence of the fact stated therein."). Clearly, it is competent and persuasive evidence of a branch manager's authority as against Proficio,[2] but the question arises as to whether it is rightly considered the same as against Hyatt.[3] It is analogous, in reverse, to a statement by a servant concerning matters within the scope of his employment. Fed. R. Evid. 801(d)(2)(D). It is logical to treat Proficio's interrogatory answer about the authority of a branch manager as binding on Hyatt, who was a branch manager for Proficio. It may even be illogical not to do so since it was surely Proficio's domain to create a job description for its employee, rather than the employee's domain to create one for himself.

---

[2] In cases where parties have said conflicting things in depositions and affidavits, the Fourth Circuit has ruled that sworn testimony, once given, may not be considered to be genuinely disputed by the same party's later affidavit. *See, e.g., In re: Family Dollar FLSA Litigation*, 637 F.3d 508, 512-13 (4th Cir. 2011). *See also Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 975 (4th Cir. 1990) (uncertainties as to resolution of issue stemmed only from differences among party's deposition testimony, testimony during administrative hearing, correspondence, and other documentary statements; no genuine dispute of material fact created by conflicting versions of party's testimony). The answer to interrogatory and the branch manager position description incorporated by reference in the answer to interrogatory preceded in time Bennett's later deposition and Hyatt's later affidavit. Proficio is fairly held to its earlier admissions as to Hyatt's ability to hire and fire employees. Its later attempts to discredit these prior admissions do not create a genuine dispute of material fact with regard to Proficio's liability for the authorized actions of Hyatt in hiring and terminating branch office employees.

[3] The Court observes that Proficio and Hyatt are represented by the same attorney and that all filings by defense counsel are on behalf of both Proficio and Hyatt.

Additionally, it is in the interest of both Proficio and Hyatt to deny he had authority to hire and fire, even though they may have different reasons for doing so. Their alignment of interests favors their similar treatment on this evidentiary point. Still, the more cautious approach is to treat the question of whether Hyatt could hire and fire branch employees as a material fact that must be resolved at trial. If that fact is resolved against Hyatt, then it would be appropriate to rule that he is a covered employer within the meaning of the FLSA.

### *C. What was the undisputed period of employment for Speert, Nieves, and Rascoe*

In the company's amended answers to interrogatories, Proficio responded to the first interrogatory, which asked, *inter alia*, the dates of employment for each Plaintiff, by stating the following:

> Scott Speert: Hired: September 2, 2009; Terminated: October 20, 2009;
> Linda Nieves: Hired: 9/8/2009; Terminated: 10/20/2009.
> Harvey Sanford: Not applicable; Mr. Sanford was never hired by Proficio.
> David Rascoe: (a) Hired: 9/9/2009; Terminated: 10/20/2009.

(Pls.' Mot. Partial Summ. J. Ex. 9, Proficio's Am. Ans. to Speert's 1st Interrog. #1.) Proficio's Rule 30(b)(6) designee conceded in his deposition that the date of September 9, 2009, was not correct for Rascoe's hiring and testified that Rascoe was hired on August 24, 2009. (Defs.' Opp. Ex. 2, Bennett Dep. 41:1-21.) No genuine dispute of material fact exists as to the following dates of employment for three of the Plaintiffs:

> Speert: September 2 through October 20, 2009
> Nieves: September 8 through October 20, 2009
> Rascoe: August 24 through October 20, 2009.

Disputes still exist between the two sides as to whether these three Plaintiffs were employed by Proficio at times other than the above-stated time periods, and no ruling is made with respect to other time periods.

9

**D. Whether Defendants can satisfy their burden of proving by clear and convincing evidence that Plaintiffs fit within the "outside salesperson" exemption**

Since an exemption would obviate the duties imposed by the FLSA on Proficio, it is best to address that issue first before considering whether Proficio's conduct, in the absence of an exemption, violated the FLSA's requirements for minimum-wage payments, overtime compensation, and recordkeeping. In 29 U.S.C. § 213(a)(1), Congress specified that the statutory mandates for payment of minimum wages and overtime do not apply to any employee employed in the capacity of outside salesman and further specified that such term was subject to definition and delimitation by regulations of the Secretary of Labor. Federal regulations provide the following definitions:

> The term "employee employed in the capacity of outside salesman" . . . shall mean any employee whose primary duty is making sales . . . or obtaining orders or contracts for services . . . and who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a)(1), (2).

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property.

29 C.F.R. § 541.502.

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the

relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700.

The phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.

29 C.F.R. § 541.701.

Exemptions from FLSA coverage "are to be narrowly construed against the employers seeking to assert them," *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960), *quoted in Purdham*, 637 F.3d at 427, and the employer must prove the applicability of an exemption to an employee by clear and convincing evidence, *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993). Defendants take the "position that Plaintiffs did not perform any compensable work for Proficio during September 2009." (Defs.' Opp. 10, ECF No. 41.) However, for the purpose of deciding this motion, the Court has already determined that no genuine issue of material fact exists as to specific dates of employment for Speert, Nieves, and Rascoe, so Defendants' "position" is not helpful in deciding the issue of exemption.

The only point otherwise argued by Defendants is that Plaintiffs concede they never performed any work at Proficio's licensed Owings Mills, Maryland, office and, therefore, Plaintiffs have conceded they were "customarily and regularly engaged away from their employer's place of business," within the meaning of the "outside sales" exemption of 29 C.F.R.

11

§ 541.500. (Defs.' Opp. 10.) Defendants' interpretation of the exemption is contrary to the explanatory language of 29 C.F.R. § 541.502, which states, "[A]ny fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property." Given that language, it matters not whether Plaintiffs worked in Proficio's "licensed" location or in another location. Defendants have not sustained their burden of proving by clear and convincing evidence the applicability of the "outside sales" exemption to Plaintiffs. In fact, no genuine dispute of material fact exists on the applicability of this exemption. It does not apply to the Plaintiffs.

> E. ***Whether Defendants violated the FLSA by not paying the required statutory minimum wages during the undisputed period of Plaintiffs' employment***
>
> F. ***Whether Defendants violated the FLSA by not paying the required statutory overtime compensation during the undisputed period of Plaintiffs' employment***

The standard to be met by a plaintiff in a FLSA case was stated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946):

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687. *See also Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108-09 (4th Cir. 1988).

As previously noted, the undisputed period of employment for Speert was September 2 through October 20, 2009. Speert received two paychecks from Proficio—one for $1,160 on October 15, 2009, and another for $1,627.84 on October 30, 2009. (Pls.' Mot. Partial Summ. J. Ex. 9, Am. Ans. to Speert's 1st Interrog. #1(f).) The pay period for the first check was October 1

through October 15, 2009. (Bennett Dep. 98:9—99:6.) Thus, the basic facts establish that Speert was not paid for the period of September 2 through September 30, 2009. Further, in Speert's answers to interrogatories, he stated that he worked at least 45 hours per week during the time of his employment with Proficio. (Pls.' Mot. Partial Summ. J. Ex. 1, Speert Ans. Interrog. #22.) This evidence is sufficient to establish a prima facie case that Speert performed work for Proficio and he was not properly compensated for it.

The burden now shifts to Proficio to come forward with evidence of the precise amount of work performed by Speert or evidence that negates the reasonableness of the inference drawn from Speert's evidence. Defendants first argue that Speert, as well as Nieves and Rascoe, did not work in Proficio's licensed office in Owings Mills, Maryland, during September 2009 because he was in the satellite office that Rascoe sought to establish for Proficio. (Defs.' Opp. 7.) As noted earlier, however, as far as the FLSA is concerned, that distinction in location of work makes no difference. Defendants next argue that Plaintiffs did not perform compensable work during this time period because Hyatt did not direct them to perform any. (*Id.* 8.) But Defendants have cited no authority for the proposition that one must be "directed" to perform work before one is considered to have worked, within the scope of the FLSA. Indeed, the FLSA defines "employ" as suffering or permitting to work. 29 U.S.C. § 203(g). No direction is necessary to this definition.

Defendants next contend the evidence shows that Plaintiffs might have been working on behalf of another entity, CMI, a marketing enterprise run by Hyatt's brother, Mitchell Hyatt, during September 2009. (Defs.' Opp. 8-9.) Even if that were true, though, it would not negate the inference that Proficio is liable for failure to compensate Plaintiffs properly since the FLSA is not premised on exclusivity of employment. The cases dealing with jointly liable employers are instructive on this point. *See, e.g., Falk*, 414 U.S. at 195; *Schultz*, 466 F.3d at 307. Thus,

Defendants have failed to carry their burden of showing Speert was properly compensated in September 2009.

The evidence as to Nieves is similar. Her undisputed dates of employment were September 8 through October 20, 2009. Although she received two more paychecks following the October 30, 2009, paycheck, she received no paycheck for September 2009. (Proficio's Am. Ans. to Speert's 1st Interrog. #1(f).) She also stated she worked at least 45 hours per week for Proficio during this time period. (Pls.' Mot. Partial Summ. J. Ex. 2, Nieves's Ans. to Interrog. #20.) Thus, she, too, has established a prima facie case for improper compensation by Proficio during September 2009. In addition to the unsuccessful arguments advanced above, Defendants contend that Nieves could not have been performing any work for Proficio since she did not have "login" credentials for part of this time and could not log into Proficio's computer system to process mortgage loans or check mortgage rates. (Defs.' Opp. 8.) Even if that were true, Defendants fail to explain how that would make it impossible for Nieves to generate new loan business from which Defendants would benefit. It must be concluded that Defendants have failed to carry their burden in relation to Nieves.

Rascoe's undisputed dates of employment with Proficio were August 24 through October 20, 2009. He also received four paychecks in October and November 2009, but none for August or September 2009. (Proficio's Am. Ans. to Speert's 1st Interrog. #1(f).) Rascoe stated he worked at least 50 hours per week for Proficio during this time. He, too, has established a prima facie case that Proficio did not compensate him properly during August and September of 2009.

Besides the ill-fated arguments Defendants advanced with respect to all Plaintiffs, Defendants contend that Rascoe continued to negotiate terms for himself and the loan officers he intended to employ in his satellite office. Consequently, neither Rascoe nor the Plaintiffs were

yet employed by Proficio. (Defs.' Opp. 7.) Assuming arguendo that Rascoe did this, it does not negate the inference that Defendants suffered or permitted Rascoe or the other Plaintiffs to work for Proficio. That inference is bolstered by Rascoe's statements that his establishment and management of the satellite office and his recruitment of loan officers were done with the knowledge and authorization of Hyatt as well as Proficio's regional manager, Mike Joyner. (Pls.' Mot. Partial Summ. J., Ex. 3, Rascoe's Ans. to Interrog. #19.) Thus, Defendants have failed to shoulder their burden with respect to Rascoe.

This conclusion applies to both the minimum-wage claim and the overtime-compensation claim. Thus, no genuine dispute of material fact exists as to whether Proficio violated the FLSA by failing to pay minimum wages and overtime compensation during the undisputed periods of employment for Speert, Nieves, and Rascoe. It is clear that Proficio did violate the FLSA.

### F. *Whether Defendants violated the FLSA by not maintaining required records during the undisputed period of Plaintiffs' employment*

The FLSA imposes a recordkeeping requirement on employers that includes keeping a record of the "wages, hours, and other conditions and practices of employment" for employees. 29 U.S.C. § 211(c). Plaintiffs do not assert any failure by Defendants in this regard as a separate cause of action, nor would such be consistent with the statutory scheme permitting employees to recover unpaid wages while vesting in the Secretary of Labor the prerogative to seek relief for other types of FLSA violations. *See Rossi v. Assoc. Limousine Servs., Inc.*, 438 F. Supp. 2d 1354, 1366 (S.D. Fla. 2006) (concluding employees do not have private right of action for violation of FLSA's recordkeeping requirements). Plaintiffs apparently only seek a ruling on this point to support their case for unpaid wages, which is necessarily based on estimates and approximations given Proficio's ready concession that it did not keep time cards for Speert, Nieves, and Rascoe. (Pls.' Mot. Partial Summ. J. Ex. 9, Proficio's Ans. to Speert's 1st Interrog.

#9.) Since this only affects the weight of the evidence and does not change the outcome of the case, no ruling is needed on this point.

## III. Conclusion

The Court holds that Proficio is a covered employer within the meaning of the FLSA, that a genuine dispute of material fact exists as to whether Hyatt is a covered employer within the meaning of the FLSA, that Defendants have not carried their burden for establishing the "outside salesman" exemption, that Speert, Nieves, and Rascoe have undisputed periods of employment as specified *supra*, and that Speert, Nieves, and Rascoe have established violations of the FLSA's requirements pertaining to minimum wages and overtime compensation for the undisputed periods of employment. A separate order will be entered reflecting these holdings.

DATED this 10th day of June, 2011.

BY THE COURT:

/s/
James K. Bredar
United States District Judge